## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

JULIE KELLOGG WILLENBRING,
and GLENN BRIAN
WILLENBRING,

      Plaintiffs,

v.

CITY OF BREEZY POINT, a Minnesota
municipal entity; OFFICER JOSEF GARCIA,
personally and in his capacity as a police
officer; OFFICER JAY LORCH, personally and
in his capacity as a police officer; OFFICER CHAD
NANGLE, personally and in his capacity as a police
officer; OFFICERS JANE DOE AND RICHARD
ROE, unknown and unnamed Breezy Point Police
officers, personally, and in their capacities as
police officers; BREEZY POINT INTERNATIONAL,
INC.; and WHITEBIRCH, INC. as operators of the
Marina Bar,

      Defendants.

**Memorandum of Law & Order**
Civil File No. 08-4760 (MJD/RLE)

---

Albert T. Goins, Sr., Goins Law Office, Ltd, and Rick L. Petry, Rick L. Petry &
Associates, P.A., Counsel for Plaintiffs.

Jon K. Iverson, Jason M. Hiveley, Stephanie A. Angolkar, Iverson Reuvers,
Counsel for Defendants City of Breezy Point, Officer Josef Garcia, Officer Jay
Lorch, Officer Chad Nangle, Officers Jane Doe and Richard Roe (collectively
"City of Breezy Point Defendants").

Leonard J. Schweich, Jardine, Logan & O'Brien, P.L.L.P, Counsel for Defendants
Breezy Point International, Inc. and Whitebirch, Inc.

---

## I.    INTRODUCTION

This matter comes before the Court on City of Breezy Point Defendants'

Motion for Summary Judgment [Docket No. 29] and Defendants Breezy Point

International, Inc. and Whitebirch, Inc.'s Motion for Summary Judgment [Docket

No. 33].  The Court heard oral arguments and now grants in part and denies in

part Defendants' motions.

## II.    BACKGROUND

### A. Factual Background

At the outset, the Court notes that the parties and witnesses herein dispute

several facts at issue in this litigation.  For the purposes of Defendants' Motions

for Summary Judgment, therefore, the Court views the factual record in a light

most beneficial to Plaintiffs, as the non-moving party.  The Court does not,

however, make any specific findings of fact.

At approximately midnight on the evening of July 28, 2009, Plaintiff Julie

Kellogg Willenbring (Julie) and her friend Elaine Jo Gisler visited the Marina Bar

in Breezy Point, Minnesota.  The Marina Bar is owned and operated by

Defendants Whitebirch, Inc. ("Whitebirch") and Breezy Point International, Inc.

("BPI").  Over the course of two hours, Julie sat at the bar with Gisler and consumed four alcoholic beverages.

While at the crowded bar, a few male patrons made unwanted advances on the women.  After making repeated requests for the men to leave them alone, the women asked the barback, Mitchell Swartout, to tell the men to move back and give some space.  According to the women, however, Swartout ignored their request.  Gisler grew frustrated, pushed her used pull tabs off the bar and threw a glass of water at Swartout.  Marina Bar security guard, Todd Szymanski, immediately directed Gisler to leave the bar.  After finishing up her remaining pull tabs, Julie left the bar and joined Gisler outside five to ten minutes later.

In the parking lot outside, the same group of men began harassing Gisler with rude comments.  Julie felt uncomfortable walking home unaccompanied and made two 911 phone calls for help.  The 911 dispatcher suggested that the women stay on the phone and simply walk away, but Julie insisted that an officer be sent to the scene.  At approximately 2:20 a.m., Defendant Officer Josef Garcia of the Breezy Point Police Department was dispatched to an unknown disturbance involving two females who claimed they were being harassed by several males using profanity.

3

Upon Garcia's arrival, Julie approached him in order to identify herself as the 911 caller.  Once he determined that she was intoxicated, however, he told her to remain quiet or that she would be arrested.  Instead, he started questioning sober Marina Bar employees and then proceeded to talk with Gisler.  During his questions, Julie began to interrupt with more efforts to get his attention.  Garcia responded by warning her that she would be placed under arrest if she continued to interrupt him.  She became anxious by the threat of arrest and yelled out that she was diabetic and suffered from claustrophobia.  Garcia immediately advised her that she was under arrest and attempted to restrain her with handcuffs.  Julie panicked, pulled back her arm, took several steps away and pleaded with Garcia as to why she was being arrested.

Garcia immediately tackled her to the ground and again tried to handcuff her, this time with assistance from Todd Szymanski, who used to be a police intern.  Although Szymanski aided Garcia with the arrest, no evidence indicates whether Garcia specifically asked for Szymanski's assistance.

Julie eventually broke free and began to stand up, but Garcia sprayed her in the face and eyes with pepper spray, causing her to fall to the ground.  Julie stood up again and Garcia ordered her to put her hands behind her back.  When she did not comply, Garcia deployed his taser without warning on her right

thigh, causing her to scream and collapse.  Garcia then commanded her to get in the police car, but she ignored his request and instead got up to leave.  He responded by deploying his taser again, this time causing her to fall, yell and soil her pants.  Julie arose and again attempted to leave, but Garcia and Szymanski grabbed her by her pants to prevent her from doing so.  The parties continued to struggle until Julie's pants were ultimately torn off, prompting Garcia to deploy his taser again.  At this point, Julie remained prone on the ground and Garcia was able to handcuff her.

After she was handcuffed, Julie came to her feet and was ordered into the squad car.  When she refused to comply, Garcia deployed his taser again.  Garcia and Szymanski then picked her up and carried her over to the car.  She began pushing her feet against the car to keep from being placed inside, so Garcia used his taser again to get her seated.  Her feet, however, were still positioned outside of the car, so she stood up and dove out of the vehicle with her hands handcuffed behind her.  Garcia held her on the ground as Szymanski placed her ankles in a hobble restraint obtained from Garcia's squad car.

At this moment, Defendant Officer Chad Nangle arrived at the parking lot and began assisting Garcia.  He testified to seeing Garcia deploy his taser on Julie as she again used her feet to prevent from being placed in Garcia's squad car.

The officers and Szymanski then hopped Julie over to Nangle's squad car and attempted to place her inside.  When she pushed back against Nangle's car, Garcia used his taser a seventh and final time on her lower back.  This time, Garcia, Nangle and Szymanski were finally able to get her into the vehicle and shut the door.  Once Julie was already in the car, Defendant Officer Jay Lorch arrived at the parking lot.

Julie was transported to the Crow Wing County Jail and charged with fourth-degree assault of a police officer, obstruction of legal process, and disorderly conduct.  She pled guilty to disorderly conduct pursuant to an Alford plea on April 3, 2008.

As a result of this incident, Julie suffered a blackened and bruised eye, a swollen cheek bone and other minor injuries.  The incident has negatively impacted her relationship with her husband, Plaintiff Glenn Willenbring (Glenn).  She claims that she is needier and more emotional, and that her marriage is less intimate.  Glenn has testified that his wife also suffers from anxiety, depression, and agitation, especially when she sees police.  Additionally, he claims to have gained weight, and started taking blood pressure medication because of the added strain on their relationship.

**B.  Procedural Background**

Plaintiffs Julie and Glenn Willenbring filed a Complaint with this Court on

July 25, 2008 with Julie alleging the following nine causes of action: (1) Assault;

(2) Battery; (3) Intentional Infliction of Emotional Distress; (4) Negligent Infliction

of Emotional Distress; (5) 42 U.S.C. § 1983 Excessive Force and Due Process

Violations; (6) 42 U.S.C. § 1985 Conspiracy to Commit Constitutional Violation;

(7) 42 U.S.C. § 1983 Municipal Liability; (8) 42 U.S.C. § 1986 Failure to Prevent

Conspiracy Agreement; and (9) Violation of Minnesota Human Rights Act

(MHRA).  Plaintiff Glenn Willenbring also seeks damages for loss of consortium.

Defendants now move for summary judgment on all counts.

## III.    DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate if, viewing all facts in the light most

favorable to the non-moving party, there is no genuine issue as to any material

fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ.

P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The party seeking

summary judgment bears the burden of showing that there is no disputed issue

of material fact.  Celotex, 477 U.S. at 323.  Summary judgment is only appropriate

when "there is no dispute of fact and where there exists only one conclusion."

Crawford v. Runyon, 37 F.3d 1338, 1341 (8th Cir. 1994) (citation omitted.)

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Factual disputes that are irrelevant or unnecessary will not be counted.  Id.  The court must view evidence, and the inferences that may be reasonably drawn from it, in the light most favorable to the non-moving part.  Graves v. Ark. Dep't of Fin. & Admin., 229 F.3d 721, 723 (8th Cir. 2000).  "[I]n ruling on a motion for summary judgment, the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'"  Hunt v. Cromartie, 526 U.S. 541, 552 (1999).

### B.  Fictitious Named Parties

As a preliminary matter, Defendants move to dismiss the fictitious named parties from the Complaint, Officers Jane Doe, Richard Roe, and unknown and unnamed Breezy Point Police Officers.

The Court concludes that these parties must be dismissed because Plaintiffs have only served the City of Breezy Point, Officers Josef Garcia, Jay Lorch and Chad Nangle, Breezy Point International, Inc., and Whitebirch, Inc. See Fed. R. Civ. P. 4(m) (stating that service shall be made within 120 days after filing the complaint with the court).  Moreover, the Complaint does not even

state facts alleging that these fictitious parties were involved in the events giving

rise to this litigation, nor have Plaintiffs amended the Complaint to name

additional officers disclosed by Defendants during discovery.  Finally, Plaintiffs

have not contested City of Breezy Point Defendants' request to dismiss these

fictitious parties and therefore appear to have abandoned any claims against

them.

### C.  Count 5: Use of Excessive Force

Officers Garcia, Nangle and Lorch assert that they are entitled to the

protection of qualified immunity from standing trial on Plaintiff's section 1983

excessive force claims.

"The doctrine of qualified immunity protects government officials 'from

liability for civil damages insofar as their conduct does not violate clearly

established statutory or constitutional rights of which a reasonable person would

have known.'"  <u>Pearson v. Callahan</u>, 129 S.Ct. 808, 815 (2009) (quoting <u>Harlow v.</u>

<u>Fitzgerald</u>, 457 U.S. 800, 818 (1982)).  In determining whether qualified immunity

applies, courts examine (1) whether the defendant violated a constitutional right

and (2) if that right was clearly established.  <u>Id.</u> at 815-16.  Courts have discretion

to address these questions in either order but the United States Supreme Court

has noted that it is often beneficial to first address the question of whether a

constitutional right was involved.  Id., at 818-22.  As a result, this Court proceeds by considering whether Plaintiff properly alleges a constitutional violation.

### 1.  Violation of a Constitutional Right

### a.  Officer Garcia

The Fourth Amendment protection against unreasonable seizures of the person provides a clearly established right to be free from excessive force during an arrest.  Guite v. Wright, 147 F.3d 747, 750 (8th Cir.1998).  "[A]ll claims that law enforcement officers have used excessive force-deadly or not-in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach."  Graham v. Connor, 490 U.S. 386, 395 (1989).  When determining whether a law enforcement officer used excessive force in the course of an arrest, "[t]he question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."  Winters v. Adams, 254 F.3d 758, 765 (8th Cir.2001) (citation omitted).

"The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  Graham, 490 U.S. at 396.  "The calculus of reasonableness must

embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." Id., at 396-97.  "Circumstances such as the severity of the crime, whether the suspect posed a threat to the safety of the officers or others, and whether the suspect was resisting arrest are all relevant to the reasonableness of the officer's conduct."  Henderson v. Munn, 439 F.3d 497, 502 (8th Cir. 2006) (citations omitted).

When considering the facts in a light most favorable to Plaintiffs, the Court determines that a reasonable officer would find Garcia's use of force excessive. See Beaver v. City of Federal Way, 507 F.Supp. 2d. 1137, 1140-41 (W.D. Wash. 2007) (holding that the first three tasings of an unarmed burglary suspect were objectively reasonable because the suspect actively resisted arrest, but that the last two tasings were excessive because two officers were present to control the situation).  When Garcia first came into contact with Julie, she did not present a threat to his safety or to the safety of others.  She was standing in the parking lot trying to get Garcia's attention and explain why she called 911.  Garcia ignored her and ultimately placed her under arrest for what could only have been a misdemeanor offense.  See Minn. Stat. § 609.50 (obstructing legal process).  When

Julie resisted arrest, Garcia used his pepper spray once and taser gun five times to eventually secure her in handcuffs and ankle restraints.  At this point, even though Julie admittedly resisted being placed in the squad car, she posed no realistic threat to the officers or risk of flight.  She was already bound at her hands and feet, and was subdued by two police officers and a security guard.  Under these circumstances, the Court concludes that Garcia's repeated use of the taser was excessive.

### b.  Officers Nangle and Lorch

The Court construes Julie's section 1983 claims against Officers Nangle and Lorch as alleging a failure to protect from use of excessive force.  (See Compl. ¶ 39-40.)  "[I]t is clear that one who is given the badge of authority of a police officer may not ignore the duty imposed by his office and fail to stop other officers who summarily punish a third person in his presence or otherwise within his knowledge."  Putman v. Gerloff, 639 F.2d 415, 423 (8th Cir. 1981).  That responsibility "must exist as to nonsupervisory officers who are present at the scene of such summary punishment, for to hold otherwise would be to insulate nonsupervisory officers from liability for reasonably foreseeable consequences of the neglect of their duty to enforce the laws and preserve the peace."  Id.

After Nangle arrived on the scene, he witnessed Garcia deploy his taser twice on Julie while she was already bound by handcuffs and ankle restraints. Viewing the facts in a light most favorable to Julie, a jury could reasonably conclude that Nangle was aware that Garcia would use excessive force with his taser and failed to intervene.

Lorch, however, arrived on the scene after Julie had already been placed inside of Nangle's squad car.  An officer is not liable for failing to intervene if he did not see the abuse or did not have time to stop the abuse.  See Putman, 639 F.2d at 424.  Because Lorch was not present when Garcia tased Julie, he cannot be held liable for failing to intervene.  As a result, Lorch did not violate Julie's constitutional rights and is therefore entitled to qualified immunity.

### 2.  Clearly Established Constitutional Right

Defendants Garcia and Nangle insist that they are still entitled to qualified immunity because they did not violate Julie's clearly established constitutional rights.  The United States Supreme Court has explained:

> [Q]ualified immunity operates to ensure that before they are subjected to suit, officers are on notice that their conduct is unlawful. For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.  This is not to say that an official action is protected by qualified immunity unless the very action in

question has previously been held unlawful, but it is to say that in
the light of pre-existing law the unlawfulness must be apparent.

Hope v. Pelzer, 536 U.S. 730, 739 (2002) (internal quotations omitted).  "Whether

the facts alleged support such a claim is a legal question for the court to decide."

Brown v. City of Golden Valley, 574 F.3d 491, 499 (8th Cir. 2009) (citing Kahle v.

Leonard, 477 F.3d 544, 549 (8th Cir. 2007).  "The relevant, dispositive inquiry in

determining whether a right is clearly established is whether it would be clear to

a reasonable officer that his conduct was unlawful in the situation he

confronted."  Saucier v. Katz, 533 U.S. 194, 202 (2001).

At the outset, "the right to be free from excessive force in the context of an

arrest is a clearly established right under the Fourth Amendment's prohibition

against unreasonable seizures."  Henderson v. Munn, 439 F.3d 497, 503 (8th Cir.

2006).  "Moreover, it is clearly established that force is least justified against

nonviolent misdemeanants who do not flee or actively resist arrest and pose little

or no threat to the security of the officers or the public."  Brown, 574 F.3d at 499

(citing Casey v. City of Fed. Heights, 509 F.3d 1278, 1278 (10th Cir. 2007)).

Accordingly, courts have found excessive use of a taser when deployed on

uncooperative but non-dangerous plaintiffs.  See Mahamed v. Anderson, Civ.

No. 07-4815 (ADM/FLN), 2009 WL 873534 at *4-5 (D. Minn. Mar. 30, 2009)

14

(denying summary judgment on issue of qualified immunity because plaintiff was "uncooperative but not dangerous or threatening, and therefore the use of a taser violated his clearly established constitutional right to be free from excessive force"); Bailey v. County of Kittson, Civ. No. 07-1939 (ADM/RLE), 2008 WL 906349 at *16-17 (D. Minn. Mar. 31, 2008) (finding genuine issue of material fact as to whether use of a taser was objectively reasonable on an uncooperative mentally ill detainee who stated that he had Hepatitis C and would bite or spit at anyone who approached him to administer his medicine); Bady v. Murphy -Kjos Civ. No. 06-2254 (JRT/FLN), 2008 WL 3262778 at *4-5 (D. Minn. Aug. 7, 2008) (finding that the use of a taser four times on a non-resistant suspect, despite the fact that he was handcuffed and lying face down on the ground, violated the suspect's clearly established constitutional rights).

Defendants assert that this case is distinguishable and warrants a finding of qualified immunity because Julie actively resisted arrest. The Court, however, declines to read the aforementioned case law as permitting an officer's unbridled and disproportionate use of force on a suspect who expresses some act of resistance but is later restrained. Indeed, the Sixth Circuit has held that repeated use of a taser while a suspect was already pinned down and under control amounted to excessive force under the Fourth Amendment because "[t]he

gratuitous use of force on a suspect who has already been subdued and placed in

handcuffs is unconstitutional." Roberts v. Manigold, 240 F. App'x 675, 677 (6th

Cir. 2007) (quoting Bultema v. Benzie County, 146 F. App'x 28, 35 (6th Cir. 2005)).

It also denied qualified immunity where officers applied a taser five times in less

than two minutes to a suspect who was lying prone and face-down in a pool of

water because the officers should have known that "gratuitous or excessive use

of a taser would violate a clearly established constitutional right." Landis v.

Baker, 297 F. App'x 453, 463 (6th Cir. 2008) (citing Hickey v. Reeder, 12 F.3d 754,

757 (8th Cir. 1993)).

Based on the Court's facts stated above, it would be clear to a reasonable

officer that Garcia's repeated use of his taser was gratuitous and unlawful,

especially once his suspect was fully restrained.  Moreover, it would be clear to a

reasonable officer under these circumstances that it was necessary to intervene

and prevent Garcia's further use of the taser gun.  Accordingly, the Court holds

that Defendants Garcia and Nangle are not entitled to qualified immunity.

### D.  Count 7: Municipal Liability

Defendant City of Breezy Point moves for summary judgment on Julie's

claim that Breezy Point, as a municipality, carries out a policy of unreasonable

and excessive force in its police tactics which led to a violation of her

constitutional rights.

"'[A] local government may not be sued under § 1983 for an injury

inflicted solely by its employees or agents' on a theory of respondeat superior."

Andrews v. Fowler, 98 F.3d 1069, 1074 (8th Cir. 1996) (quoting Monell v. Dep't of

Social Servs. of the City of New York, 436 U.S. 658, 694 (1978)).  "For a

municipality to be liable, a plaintiff must prove that the municipal policy or

custom was the 'moving force [behind] the constitutional violation.'"  Mettler v.

Whitledge, 165 F.3d 1197, 1204 (8th Cir. 1999) (quoting Monell, 436 U.S. at 694).

To bring a claim under section 1983, a plaintiff must show: (1) the municipal

corporation had a policy, practice or custom (2) of violating individuals' federally

protected rights and (3) that the policy proximately caused the plaintiff's alleged

damages.  Monell, 436 U.S. at 690-691.  "Proof of a single incident of

unconstitutional activity is not sufficient to impose liability under Monell, unless

proof of the incident includes proof that it was caused by an existing,

unconstitutional municipal policy, which policy can be attributed to a municipal

policymaker."  Oklahoma City v. Tuttle, 471 U.S. 808, 823-24 (1985).

The Eighth Circuit does not use "policy" and "custom" interchangeably.

Mettler, 165 F.3d at 1204.  "[A] 'policy' is an official policy, a deliberate choice of

a guiding principle or procedure made by the municipal official who has final

authority regarding such matters." Id.  "A municipality's policy is not

unconstitutional if it might permit unconstitutional conduct in some

circumstances; it is unconstitutional only if it requires its persons to act

unconstitutionally." Dean v. Minneapolis Police Dept., Civ. File No. 04-3314

(MJD/AJB), 2005 WL 3372961 at *5 (D. Minn. Dec. 12, 2005) (citing Handle v. City

of Little Rock, 772 F.Supp. 434, 438 (E.D.Ark. 1991)).

To state her claim of municipal liability, Julie relies on an article authored

by Breezy Point Chief of Police in a Breezy Point newsletter wherein he states:

> Police officer duties are inherently dangerous.  Officers are required
> to limit this danger by utilizing mandatory training techniques to
> protect themselves and the public.  This can sometimes be
> interpreted as being rude or overly aggressive.  Police officers are
> required to control any scene that they encounter.  An officer not in
> control of any scene means they have failed to protect themselves
> and the public.  Early and overwhelming force is often used to
> prevent an escalation in violence that could result in more serious
> injuries.

(Garcia Dep. Ex. 5.)  The Court determines that the content of this newsletter is

lawful, proper and reasonable, and does not require officers to act

unconstitutionally.  Because Julie has failed to introduce any other evidence

illustrating an unconstitutional policy or custom, the Court grants summary

judgment on this claim.

### E.  Count 6: Section 1985(3) Conspiracy Claim

Julie alleges that "the actions of Officer Garcia, private security officers, and other officers were conducted as part of a tacit agreement or conspiracy to refuse to vindicate, protect or to not infringe the constitutional rights of female persons in the City of Breezy Point."  (Compl. ¶ 44.)  She argues that such a tacit agreement or conspiracy violates 42 U.S.C. § 1985(3).

To establish a conspiracy to violate a plaintiff's civil rights in violation of 42 U.S.C. § 1985, she must prove: "(1) the existence of a civil conspiracy; (2) that the purpose of the conspiracy was to deprive [her] either directly or indirectly of [her] civil rights; (3) that a conspirator did an act in furtherance of the object of the conspiracy; and (4) damages, shown by demonstrating either injury to person or property or the deprivation of a civil right." Mettler v. Whitledge, 165 F.3d at 1206 (citation omitted).  The Supreme Court has emphasized that section 1985(3) requires that a claimant establish the conspiracy is motivated by "some racial, or perhaps other class-based, invidiously discriminatory animus." United Brotherhood v. Scott, 463 U.S. 825, 829 (1983).  "Speculation and conjecture are not enough to prove a conspiracy exists." Mettler, 165 F.3d at 1206.

"[T]o prove [a conspiracy to violate civil rights], Plaintiff must allege specific facts indicating a mutual understanding among the conspirators to take

actions to an unconstitutional end." Feist v. Simonson, 36 F. Supp. 2d 1136, 1150

(D. Minn. 1999), aff'd 222 F.3d 455 (8th Cir. 2000), overruled on other grounds,

Helseth v. Burch, 258 F.3d 867 (8th Cir. 2001).  In other words, "there must be

'meeting of the minds' to support allegations of a conspiracy." Feist, 36 F. Supp.

2d at 1150.

Julie's conspiracy claim lacks evidence to support a "meeting of the

minds" between Breezy Point police officers and employees of the Marina Bar to

violate her constitutional rights.  The only evidence she has tendered is that

Marina Bar security officers often assist or work in concert with Breezy Point

officers when carrying out arrests.  Even assuming this allegation is true, there is

still no proof indicating that the parties conspired to deprive Julie of her

constitutional rights, let alone on account of her gender.  The Court determines

that summary judgment is therefore warranted on this conspiracy claim.

### F.  Count 8: Section 1986 Failure to Prevent Conspiracy

Julie also asserts a section 1986 claim against the Breezy Point police

officers and the City of Breezy Point for failing to prevent a tacit agreement and

conspiracy to deprive her of her civil rights.  "A section 1986 claim must be

predicated upon a valid section 1985 claim." Gatlin v Green, 362 F.3d 1089, 1095

(8th Cir. 2004).  Because the Court has already determined that the underlying

conspiracy claim fails, summary judgment is warranted on this count as well.

### G. Minnesota Tort Claims

Defendants move for summary judgment on the Minnesota state tort

claims of assault, battery, intentional infliction of emotional distress, and

negligent infliction of emotional distress.

On its face, the Complaint's allegations of assault and battery concern only

Defendants Garcia, Nangle and Lorch and do not include allegations against

employees of Whitebirch and BPI.  Nevertheless, the parties have argued for and

against summary judgment as if the allegations also include Whitebirch and BPI.

Because Whitebirch and BPI raised their opposition as to the merits of Plaintiffs'

claims, the Court concludes that they received sufficient notice to defend against

these claims.  As to Nangle and Lorch, however, Plaintiffs have failed to include

any discussion in their opposition memorandum or at oral argument as to why

these Defendants should be subject to liability under any of the state tort claims.

Because Plaintiffs have exclusively focused their analysis as to the actions of

Garcia and Szymanski, the Court finds that Plaintiffs have abandoned their

claims against Defendants Nangle and Lorch.

### 1.  Counts 1 and 2: Assault & Battery

In Minnesota, an "assault" has been defined as an "unlawful threat to do bodily harm to another with the present ability to carry the threat into effect." Dahlin v. Fraser, 206 Minn. 476, 478, 288 N.W. 851, 852 (Minn. 1939). "Mere words or threats alone do not constitute assault" unless accompanied by a threat of physical violence under conditions indicating present ability to carry out the threat. Id. "The display of force must be such as to cause plaintiff reasonable apprehension of immediate bodily harm." Id. A "battery" is an intentional unpermitted offensive contact with another. Paradise v. City of Minneapolis, 297 N.W. 2d 152, 155 (Minn. 1980). Minnesota Statutes, however, authorize police officers to use reasonable force when effectuating arrests. Minn. Stat. § 609.06. Because police officers may come into contact with individuals for legitimate purposes, the force used must be excessive to constitute battery. Johnson v. Peterson, 358 N.W.2d 484, 485 (Minn. Ct. App. 1984) (holding that force used by police to remove individual from his vehicle was not excessive and therefore did not constitute a battery).

Garcia argues that Julie's assault and battery claims are barred by the doctrine of official immunity. "Official immunity is a common law doctrine that protects government officials from suit for discretionary actions taken by them in the course of their official duties." Sletten v. Ramsey County, 675 N.W.2d 291,

299 (Minn. 2004) (citation omitted).  There is a two-step inquiry for determining if official immunity is available:  "(1) whether the alleged acts are discretionary or ministerial; and (2) whether the alleged acts, even though the type covered by official immunity, were malicious or willful and therefore stripped of the immunity's protection."  Dokman v. County of Hennepin, 637 N.W.2d 286, 296 (Minn. Ct. App. 2001) (citing Davis v. Hennepin County, 559 N.W.2d 117, 122 (Minn. Ct. App. 1997)).

A ministerial duty is "'[w]hen the job is simple and definite,' as when a public official has a clear 'duty to adhere to ordinances and statutes.'"  Brown v. City of Bloomington, 706 N.W. 2d 519, 523 (Minn. Ct. App. 2005) (quoting Wiederholt v. City of Minneapolis, 581 N.W.2d 312, 316 (Minn. 1998)).   In Brown, the court ruled that a police officer was not entitled to official immunity because even though his decision to use force was discretionary, his failure to properly load a shotgun with less lethal rounds in conformity with the police department's procedure was ministerial.   Id. at 523-524.  The Court agrees with Defendants that Julie's claims are centered on Garcia's discretion to deploy his taser rather than his failure to follow a specific policy.

Still, "[a]n official given a legal duty which calls for an exercise of judgment or discretion will not be held personally liable for damages resulting

from execution of the duty unless he is guilty of a willful or malicious wrong."

Brown, 706 N.W.2d at 523.  "For purposes of official immunity, willful and

malicious are synonymous and are defined as 'the intentional doing of a

wrongful act without legal justification or excuse.'"  Garcia v. City of St. Paul,

Civ. No. 09-83 (JNE/AJB), 2010 WL 1904917 at *9 (D. Minn. May 10, 2010)

(quoting Rico v. State, 472 N.W.2d 100, 107 (Minn. 1991)).

　　　As discussed above, there is an issue of fact as to whether Garcia acted

maliciously when effecting the arrest here.  He deployed his taser on multiple

occasions despite having already secured Julie at the hands and feet and despite

receiving assistance from Nangle and Szymanski.  As a result, summary

judgment is not warranted on these state tort claims as against Garcia.

　　　Whitebirch and BPI similarly argue that the assault and battery claims

against Szymanski must fail because he was entitled to use reasonable force

when assisting Garcia in effecting the arrest.  See Minn. Stat § 609.06 subd. 1

("Except as otherwise provided in subdivision 2, reasonable force may be used

upon or toward the person of another without the other's consent when the

following circumstances exist or the actor reasonably believes them to exist: (1)

when used by a public officer or one assisting a public officer under the public

officer's direction: (a) in effecting a lawful arrest.").  The Court determines,

however, that a factual issue remains as to whether Garcia even sought or

requested assistance from Szymanski.  For this very reason, the Court also

declines to reach Defendants' request for vicarious official immunity and

concludes that summary judgment is not warranted.

### 2.   Counts 3 and 4: Intentional and Negligent Infliction of Emotional Distress

To establish a claim for intentional infliction of emotional distress, a

plaintiff must show: (1) that the complained-of conduct was extreme and

outrageous; (2) the conduct was intentional and reckless; (3) it caused the

plaintiff emotional distress; and (4) the emotional distress was severe.  Hubbard

v. United Press Int'l. Inc., 330 N.W.2d 428, 438-39 (Minn. 1983).  To establish a

claim for negligent infliction of emotional distress a plaintiff must show she (1)

was within a zone of danger of physical impact; (2) reasonably feared for her

own safety; and (3) suffered severe emotional distress with attendant physical

manifestations.  K.A.C. v. Benson, 527 N.W.2d 553, 557 (Minn. 1995).  "[T]he law

intervenes only where the distress inflicted is so severe that no reasonable

[person] could be expected to endure it."  Hubbard, 330 N.W.2d at 438-39

(citations omitted).  Proof of physical injury is not a requirement to recover for

intentional infliction of emotional distress, Dornfeld v. Oberg, 503 N.W.2d 115,

118 (Minn. 1993), but a showing of physical injury generally serves as evidence of severe emotional distress.  M.H. v. Caritas Family Servs., 488 N.W.2d 282, 290 (Minn. 1992).

As a result of this incident, Julie claims that she has suffered a strain on her relationship, anxiety, sleeplessness, depression and bouts of crying.  The Eighth Circuit, however, has held that these claims of emotional distress fail to meet the severity requirement necessary to survive as a matter of law.  Peterson v. City of Plymouth, 945 F.2d 1416, 1421 (8th Cir. 1991) (recognizing that depression, stomach disorders, high blood pressure, embarrassment, loss of sleep, stress, anxiety humiliation, mental anguish, and loss of reputation are insufficient);  see also Garcia, 2010 WL 1904917 at *10 (holding that nervousness, sleep loss, and bouts of crying were insufficient to support the plaintiffs' claims for intentional and negligent infliction of emotional distress).  As a result, the Court determines that summary judgment is warranted on these claims.

### 3.  Loss of Consortium

Defendants and Plaintiffs agree that Glenn Willenbring's loss of consortium claim is derivative to his wife's state tort claims.  "Although undeniably derivative, a spouse's claim for loss of consortium has *always* been based upon a bodily injury (albeit to the other spouse)."  Carlson v. Mutual Serv.

26

Cas. Ins. Co., 527 N.W.2d 580, 583 (Minn. Ct. App. 1995). Because the Court has

already concluded that the facts here warrant denial of Defendants' motion for

summary judgment as to Julie Willenbring's claims of assault and battery, the

Court also denies Defendants' motion for summary judgment as to Glenn

Willenbring's derivative loss of consortium claim.

### H. Count 9: Minnesota Human Rights Act Violation

City of Breezy Point Defendants and Defendants Whitebirch and BPI move

for summary judgment on Julie's claims that they discriminated against her

based on her protected class status as a woman, in violation of Minnesota

Statutes section 363A.11, and aided, abetted or incited harassment or

discrimination against her in violation of section 363A.14.

In Plaintiffs' opposition memoranda, they claim to have presented an

adequate prima facie case subjecting Defendant officers and City of Breezy Point

to MHRA liability for discriminating against Julie based on her protected class

status as a woman. They do not, however, present a single fact to support this

claim against these parties, and instead focus their arguments entirely against

Defendants Whitebirch and BPI. Based on the Court's determination that

Plaintiffs failed to show the officers' gender based intent to infringe Julie's

constitutional rights in their section 1985 claim, it also concludes that Plaintiffs

have failed to establish discriminatory intent here.  The Court therefore focuses

its inquiry into the acts of White Birch and BPI employees.

### 1.  Discrimination from Public Accomodations

Section 363A.11 subdivision 1(a) states that is an unfair discriminatory

practice "to deny any person the full and equal enjoyment of the goods, services,

facilities, privileges, advantages, and accommodations of a place of public

accommodation because of … sex."  When analyzing discrimination cases, the

Minnesota Supreme Court has adopted the three-part McDonnell Douglas test.

Hubbard v. United Press Int'l, Inc., 330 N.W.2d 428, 441 (Minn.1983) (citing

McDonnell Douglas Corp v. Green, 411 U.S. 792 (1973)).  This test consists of a

prima facie case, an answer, and a rebuttal.  Id.  In the public accommodations

context, the elements of a prima facie case are: (1) the plaintiffs are members of a

protected class; (2) the defendant discriminated against plaintiffs regarding the

availability of its facility; and (3) the discrimination was because of plaintiff's

membership in the protected class.  See Potter v. LaSalle Sports & Health Club,

368 N.W.2d 413, 416 (Minn. Ct. App. 1985).

In this case, Julie alleges a claim of disparate treatment in access to Marina

Bar and enjoyment of its services as well as a claim of sexual harassment.  She

claims that Swarthout, a Marina Bar employee, made no attempt to ask male

patrons to leave her and her friend alone.   Even assuming that Swarthout

neglected to speak with the men, she has provided no evidence suggesting that

his failure to do so was motivated by her status as a woman.   Furthermore, there

is no evidence suggesting that any employee of the Marina Bar sexually harassed

Julie.   Plaintiff has alleged that only male patrons of the bar were responsible for

the harassment.   Accordingly, Julie's section 363A.11 claim fails as a matter of

law.

### 2.  Aiding and Abetting Discrimination

Under Minnesota Statutes section 363A.14, it is an unfair discriminatory

practice for any person to intentionally aid, abet, incite, compel, or coerce a

person to engage in any of the practices forbidden by this chapter.

Julie argues that Marina Bar employees did not respond to her requests for

assistance, thereby making Whitebirch and BPI liable for aiding and abetting

discrimination.   As noted above, however, there is no evidence showing that any

employee intended to discriminate against Julie or her friend.   In fact, the

evidence shows that she actually felt safe enough in the bar to stay and finish

playing pull tabs after Gisler had been ordered to leave.   With respect to the

parking lot, Julie admitted at her deposition that she did not seek help from

Marina Bar personnel.  For all of these reasons, Julie has failed to state a claim of

discrimination under Minn. Stat. § 363A.14.

## IV.   ORDER

Based on the files, proceedings, and arguments in the record, the Court

**hereby ORDERS** that the City of Breezy Point Defendants' Motion for Summary

Judgment [Docket No. 29] is **GRANTED IN PART and DENIED IN PART** and

Defendants Whitebirch and BPI's Motion for Summary Judgment [Docket No.

33] is **GRANTED IN PART** and **DENIED IN PART** as follows:

1.  The Court **DISMISSES** Officers Jane Doe, Richard Roe, and unknown and unnamed Breezy Point Police Officers.

2.  The Court **DENIES** City of Breezy Point Defendants' motion for summary judgment on counts 1, 2 and 5 of the Complaint as to Defendant Officer Josef Garcia and **GRANTS** Defendants' motion for summary judgment on counts 3, 4, 6, 8, and 9 of the Complaint as to Defendant Officer Josef Garcia.

3.  The Court **DENIES** City of Breezy Point Defendants' motion for summary judgment on Count 5 of the Complaint as to Defendant Officer Chad Nangle and **GRANTS** Defendants' motion for summary judgment on counts 1, 2, 3, 4, 6, 8 and 9 as to Defendant Officer Chad Nangle.

4.  The Court **GRANTS** City of Breezy Point Defendants' motion for summary judgment on counts 1, 2, 3, 4, 5, 6, 8 and 9 as to Defendant Officer Jay Lorch.

5.  The Court **GRANTS** City of Breezy Point Defendants' motion for summary judgment on counts 6 and 9 of the Complaint.

6.  The Court **DENIES** Defendants Breezy Point International, Inc. and White Birch, Inc.'s motion for summary judgment on counts 1 and 2 of the Complaint and **GRANTS** Defendants' motion for summary judgment as to counts 3, 4 and 9 of the Complaint.


Date:  September 16, 2010                              s/ Michael J. Davis
                                                      Michael J. Davis
                                                      Chief Judge
                                                      United States District Court